Doe v. Smith Zach Greenemeier Okay, Mr. Rodham. May it please the court, Investigator Smith captured the essence of this case well when she testified in her deposition that these children didn't have to be molested for the second time. The key fact that drove this entire investigation was that this was the second time that at least one of Plaintiff's children had been molested at this same house by this same cousin on a prior occasion. Prior occasion actually involved all three of her children. She knew more than that, didn't she? She knew about a 2013 incident? Yes. She knew about a 2014 incident which happened two weeks before the grandparents visit or the visit to the paternal grandparents in Florida, right? Yes. And in that report, wasn't it the paternal grandmother's concern that the mom sort of fluffed this off as just it's a family thing and we don't need to take this seriously? Yeah, I don't want to get any agencies involved. And we also have at least indications from one of the child that every time they would go over to R.L.'s house that this would happen. Right. Right. And Plaintiff in her interview with Investigator Smith said, I talk to my children all the time about molestation. And so when you have a child in a forensic interview saying, I get molested every time I go to that house, and you have Plaintiff saying, I talk to my children all the time about this, a reasonable officer can assume from those statements, the mother knows bad things are still going on at that house. And she's still letting her kids go to that house. And that, and she had, and Smith had the DFAX intake reports where their expressed concern was, this has happened before at this house. Mother's still letting the kids go back to this house. What is she doing to protect her kids? So your opposing counsel says, and you have to admit, you put a lot of weight on R.L.'s statement that, about the sleepover. Right. And I think a lot of the case hinges on that. Your opposing counsel gets up here and tells us, that is not credible and no reasonable officer would rely on that testimony for any number of reasons. And the brief lays out, I think, four or five reasons why she's not credible. Why, tell me why opposing counsel is not correct about that and why a reasonable officer could have relied for arguable probable cause purposes. Well, I think a plaintiff misunderstands the nature of a forensic interview. A forensic interview, it's not an interrogation, nor is it a cross-examination. It is an interview by a trained interviewer where the purpose of the interview is to find out the facts of what happened. And so the interviewer is not bound by the rules of evidence, probably doesn't even know the rules of evidence. And so the interviewer is not going to go into the niceties that we would probably go into if we were doing the interview. And is not going to ask some of the questions that we would like to have asked. And so while there are questions we would have liked to have asked, it is notable that the forensic interviewer testified in her deposition that this child was coached. And yet even though she was coached, she still stated in her forensic interview that it was plaintiff who made the decision for her children to spend the weekend at that house because she did not want her kids staying with her brother because he's mean to them. That is a very, that is, that sounds exactly like an explanation that would be given to a child. I can see an adult giving that explanation to a child. Here's why your cousin is going to be staying with you. Because, well, I don't want them to stay with Aaron. He's mean. Your opposing counsel also says that there was an affirmative defense here or at least a negation of intent that was significant. That the mother and the mother of the children and her mother both told them that the mental health professionals, counselors, that Children's Protective Services all said that it was okay because she wasn't counseling for her children to be with R.L. in a supervised setting. And that was ultimately what Doe intended to happen. Well, I think that . . . Is an officer required to present that to a magistrate judge? Not in this case because here's what the guidance was. The guidance was it is okay for plaintiff's kids to be around the cousin. I don't know what be around means. It has never been explained in this case. Going to the same school with the cousin is different from having a four-night sleepover with the cousin. Those are very different situations which require very different supervisory arrangements. And it seems that plaintiff took this guidance as, well, as long as one adult is present, then everything's okay. I know the briefs use the term exculpatory evidence. It's not a great term because Brady really comes up in the trial context and it derives from trial rights and not from pre-arrest rights. But shouldn't we want prosecutors to present exculpatory evidence to a magistrate judge even if ultimately saying, I don't believe this and here's why I don't believe it, but here's the defense that has been presented and here's evidence which contradicts my theory? I think there are cases where an officer may be expected to present such exculpatory evidence, where such evidence has more of a firmer basis. Maybe there's physical evidence that may support the suspect's story to some degree. So you're saying because the evidence mostly came from the mother and the mother's mother, that the officer is allowed to make a credibility determination of whether to present that to the magistrate judge? Well, I think so because we're looking at double and triple hearsay. That's always going to be the case for a search warrant though or for an arrest warrant. It's one officer swearing out about what they heard. I mean, that's always going to be the case. Well, it is, but if all they're given is, they said it's okay for my kids to be around this cousin, that doesn't tell the officer much of anything. If they said, the cousin's therapist said that it was okay for my kids to have a three or four night sleepover at the cousin's house with Jimmy being the sole supervision, that would be a different situation, probably. Well, what about the information that the father and the brother disregarded Ms. Doe's instructions? Well, that's interesting because, number one, we don't have any testimony from Donald at all. We have hearsay from plaintiff and from Aaron. Aaron doesn't admit to doing anything in his declaration. He throws Donald under the bus just like plaintiff does. Again, that is simply just conflicting information with the other information that Smith had, and she was not required to credit that information because these adults had motive to make potentially false statements. Plaintiff was scared she was going to lose her kids. There was testimony that when Smith obtained arrest warrants, there was a meeting at DFACS as to whether the cousin was going to be removed from Donna's home. So there was a possibility that kids are going to be taken out of homes and put into foster care. So there's certainly a motivation for adults to change their story. And so Smith was not obligated to credit those statements since she had other information to the contrary. Now, if the court does not have further questions, I'll cede the remainder of my time.  Thank you, Your Honor. Thank you. Mr. Greenemeyer, you've got four minutes. Thank you. A couple of responses to opposing counsel's argument. With regard to R.L.'s statement, if R.L.'s statement is going to be taken against the mountain of other evidence, that's one thing. But the core question is, was R.L.'s statement, even on its own terms, reasonably trustworthy information? And I think there are serious doubts about that, as we've indicated in our briefing. She was the person with the least basis to know. It was a stray comment, and everyone else testified unequivocally about what happened. If opposing counsel said that this is a forensic interview, so it doesn't work quite the same, that's true. But at the same time, Smith can feed questions to the forensic interviewer and can ask that the interviewer ask those questions. And none of the children were specifically asked that question, which speaks to an investigation that was not reasonable and was not designed to get at this fact. Another point that hasn't been talked about yet is Smith's materially false statements to the magistrate about Jimmy being the prior offender. Smith's theory of the case from start to finish, as told to the prosecutor, as told to even the forensic interviewer, was that Jimmy was a known prior offender. Didn't that come from Doe? No. I'm reading page 56 of Ms. Lewis-Martin's deposition. Answer, I didn't know that up until then. Donna Lowery, Jimmy, let's back up, said that Jimmy had been in prison and had been released and so-and-so had allowed him to come and move into her home. Question, now how did you learn that Jimmy had been in prison? Answer, Doe, it's a different name obviously, Doe told me. Question, do you remember when Doe told you that? Answer, like I just stated, the date of these interviews. So Doe specifically denied making that statement. That statement was made with Smith, the forensic interviewer, and Doe altogether. This was one of the bases that Judge Batten reconsidered. In the original order, he said that basically what you just said, and then on reconsideration said, okay, we're not considering that fact. But there's a conflict of evidence. There's a conflict of evidence at best, yeah. He gave, it seems, every benefit of the doubt here. I mean, I thought that that order on the motion for reconsideration showed really the care with which Judge Batten treated this record. Going back just one second to whether there's a conflict of evidence. Here, this is not a situation where there's a conflicting evidence that an officer needs to sift through. Smith was in that conversation. I understand. It didn't happen. There's a judicial material fact which inures to your benefit. I understand. And then finally, even if it was assumed that Jimmy was the only caregiver, and even if it was assumed, contrary to the evidence, that Donald and Aaron weren't also supposed to be there, there's still not evidence that Doe had any notion that Jimmy would be an inappropriate caregiver for reasons outlined in our brief. I see my time is up. Thank you. We have your case. We are adjourned for the week. All rise.